OPINION
{¶ 1} Edward D. Wright, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which it found appellant guilty of robbery, in violation of R.C.2911.02, a second-degree felony.
 {¶ 2} On August 24, 2002, at approximately 1:00 a.m., Reginald Henderson left an Economy Inn in Columbus, Ohio, after watching a football game with his friend. Henderson claimed that, as he walked to his residence at the YMCA, appellant approached him with no shirt on, demanded money, and then hit and kicked him. Henderson testified he gave appellant $32 and said it was no big deal because he had more money in his room. Appellant asked where, and Henderson, believing he could get help, told him the Inn Town Hotel, which was across the street. Henderson testified that appellant forced him toward the hotel. In the parking lot, the hotel manager confronted them and told them they had to leave. Henderson claimed that, after starting to walk away, he turned, ran to the manager, and told him what had happened. Appellant then began walking away toward the Economy Inn. The manager pointed out two community crime patrol volunteers nearby, and Henderson told them what had happened. After Henderson identified appellant, the volunteers contacted Columbus police, while one followed appellant on his bicycle to the Economy Inn. Henderson testified that, after the police arrived, he saw appellant inside the hotel at a vending machine, still wearing no shirt. He identified appellant to the police and, after a physical confrontation, several police officers arrested appellant.
 {¶ 3} Appellant was charged with two counts of robbery and one count of kidnapping. The case proceeded to a jury trial in February 2003. At trial, Henderson, Columbus Police Detective Nicole Miller, Community Crime Patrol Officers Loren McCarty and David Byers, and Columbus Police Officer Heath Johnson testified on behalf of the state. Appellant testified on his own behalf. Appellant denied he had robbed Henderson. He claimed that he and his girlfriend, Nellie Mayburger, had rented a room at the Economy Inn, and he was walking to get some ice and snacks on the first floor when he encountered Henderson arguing with several other individuals about money. He said Henderson then approached him and asked him for change. He told Henderson he did not have any and was going to the Inn Town Hotel to get some snacks. Appellant testified that Henderson said his uncle was at the Inn Town Hotel, and he could get change from him. Appellant said they both walked to the Inn Town Hotel but were stopped by a manager in the hotel parking lot. Henderson told the manager he had an uncle at the hotel, and the manager called the room. Appellant stated the man in the room said he did not want to see anyone, and the manager told them they had to leave. Appellant said that Henderson followed him a short way back to the Economy Inn but then got agitated and started jumping up and down. Appellant testified that, after returning to the Economy Inn, he paid for another night and, as he turned to walk away, the police arrested him. Henderson testified that appellant's version of the events was not true. The jury acquitted appellant of the kidnapping charge and one of the robbery charges, but found him guilty on the remaining robbery charge. After a presentence investigation, the trial court sentenced appellant to four years incarceration. Appellant appeals the trial court's judgment, asserting the following two assignments of error:
First Assignment of Error
The trial court erred in conducting an independent investigation of a defense witness and using the results of that investigation to intimidate the defendant into avoiding the use of the witness at trial.
Second Assignment of Error
The judgment of the trial court was against the manifest weight of the evidence.
 {¶ 4} Appellant argues in his first assignment of error that the trial court erred in conducting an independent investigation of a defense witness and using the results of that investigation to intimidate the defendant into avoiding the use of the witness at trial. At trial, the following exchange took place between defense counsel, Mr. Bernard, the prosecutor, Mr. Kirschman, and the trial court:
MR. BERNARD: We have a problem that I need to bring up now before I bring the jury in.
MS. MAYBURGER was going to be my first witness. She's had baby-sitter problems. Baby-sitter is on her way. She should be here as quickly as fifteen minutes.
THE COURT: She also has a warrant out for her arrest.
MR. BERNARD: I am aware of that. A case from '97 where she didn't pay her fine and costs and she's trying to come up with the money to pay that so she can get that taken care of. I've already had discussions with Judge Jenkins' bailiff about that. She just doesn't have the money at this point.
She's going to be here. I don't know exactly where we stand
MR. KIRSCHMAN: State's concluded. We are ready to move our exhibits into evidence.
MR. BERNARD: So what I would like to be able to do is be able to do that. I'll do my Rule 29, however long that takes. And I beg the court's indulgence.
 {¶ 5} After defense counsel argued his Crim.R. 29 motion, which the trial court denied, the following exchange took place:
THE COURT: How many witnesses to do you have?
MR. BERNARD: It's her and my client.
THE COURT: I'm going to wait five more minutes, Bob, then we are going to get going.
Tell the jury five more minutes.
MR. BERNARD: Your Honor, it's always been my understanding that a person that's coming to testify in a case isn't subject to arrest at that point in time because they are here voluntarily to testify in a criminal case, that they are not going to be subject to arrest for doing that.
THE COURT: I don't know. As soon as she leaves the courtroom out in the hallway, she is subject to arrest. Can't do anything about it. There is an active warrant. I can't ignore an active warrant.
MR. BERNARD: Of course at this time point, I have no opportunity to speak to Judge Jenkins to see if there is anything I can do about that.
THE COURT: She will in all likelihood be held up here. I don't know how long you've known about this active warrant. I cannot ignore an active warrant.
MR. BERNARD: Like I said, it's always been my understanding that somebody who appears voluntarily to testify in a case is not going to be subject to an arrest.
THE COURT: I know that's not true. People that are under subpoena — I don't know what the rule is — but I do know the rule they are not supposed to be arrested inside the courtroom if they are under somebody. That's why I said outside in the hallway.
Let the record reflect it's 9:25.
 {¶ 6} We first note, although not directly at issue in this assignment of error, R.C. 2331.12 prohibits arrests in any court of justice during the sitting of such court. Further, R.C.2331.11 grants privilege from arrest to witnesses while going to, attending, or returning from court. However, the privilege granted to witnesses by R.C. 2331.11 and 2331.12 relates only to civil arrest while going to, attending, or returning from court, and such sections do not privilege witnesses from arrest for crimes or misdemeanors at such times. Akron v. Mingo (1959),169 Ohio St. 511, at syllabus. In the present case, there is no dispute that the arrest warrant issued to Mayburger for failure to pay fines and costs was criminal in nature. As such, it did not fall under the privilege from civil arrests granted in R.C.2331.12 or 2331.11, and the trial court was correct that Mayburger would be subject to arrest if she appeared to testify.
 {¶ 7} Notwithstanding, appellant asserts that the trial court's comments regarding the arrest of Mayburger intimidated him into not calling her to testify. However, there was no evidence presented at trial that appellant did not call Mayburger because he feared her arrest. After appellant testified, defense counsel vaguely stated:
MR. BERNARD: * * * Your Honor, subject to the exhibits and speaking with the court, we have no further witnesses.
Therefore, we simply have no evidence from the trial to support appellant's contention that he did not call Mayburger because he was intimidated by the trial court's remarks.
 {¶ 8} The only indication in the record as to why Mayburger did not testify is from the sentencing hearing, at which defense counsel stated:
MR. BERNARD: My client made the decision, not Ms. Mayburger, to not have Ms. Mayburger testify because there was a warrant for her arrest. The Court was aware of that. He chose not to use her. * * *
However, this explanation was after the fact and was not supported by any statements or discussions from the trial. The only evidence from the trial itself is that Mayburger was not present at the commencement of the defense's case because she was having babysitter problems. There is no further indication that she ever showed up at court and would have been otherwise available to testify. Therefore, we are without convincing evidence that the trial court's comments had any prejudicial effect.
 {¶ 9} Further, even if we had found error in the trial court's actions, because appellant never proffered Mayburger's testimony, we would have been unable to determine whether her testimony would have had any effect upon the jury's verdict. The only indication of the substance of Mayburger's testimony was from defense counsel during the sentencing hearing, when he indicated that, if she had testified, Mayburger would have "verified part of what my client said." Without knowing what Mayburger would have specifically testified to, we could not have reviewed the prejudicial effect of her failure to testify.
 {¶ 10} Appellant also argues that the trial court's actions demonstrated bias and partiality, in violation of the Code of Judicial Conduct promulgated by the Ohio Supreme Court. As to the contention that a trial court may not independently seek out the presence of active warrants for witnesses in criminal cases, there is no evidence in the record as to how the trial court acquired such information, and appellant concedes as much. It is just as likely that the other judge's bailiff informed the judge in the present case after defense counsel spoke with the bailiff about the matter. As to the trial court's statements regarding the warrant, we find no authority, and appellant cites to none, that the trial court's correct statement that a potential witness may be arrested due to an active warrant is a violation of any code of conduct. Further, insofar as appellant's argument depends upon a violation of the Code of Judicial Conduct, the instant appeal is not the proper venue for such a complaint. Allegations of judicial misconduct under the Code of Judicial Conduct are not cognizable on appeal but are matters properly within the jurisdiction of the disciplinary counsel. See Parker v. Elsass,
Franklin App. No. 01AP-1306, 2002-Ohio-3340, at ¶ 25, citingSzerlip v. Szerlip, Knox App. No. 01CA09, 2002-Ohio-2541, at ¶ 18. For these reasons, appellant's first assignment of error is overruled.
 {¶ 11} Appellant argues in his second assignment of error that the trial court's judgment was against the manifest weight of the evidence. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Although we are permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must also give great deference to the factfinder's determination of witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28. The policy underlying the presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.Thompkins, supra, at 387, citing Martin, supra, at 172.
 {¶ 12} Appellant was convicted of robbery, a violation of R.C. 2911.02. R.C. 2911.02(A)(2) provides that no person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall inflict, attempt to inflict, or threaten to inflict physical harm on another. Appellant makes several specific arguments as to why the trial court's judgment was against the manifest weight of the evidence, which we will address in turn. Appellant first points out that the photograph of Henderson's face, taken by Columbus Police Detective Nicole Miller, does not clearly demonstrate that Henderson was injured or, if so, when the injury may have occurred. Our own review of the photographs, however, does demonstrate quite clearly what appears to be swelling on Henderson's left jaw. Further, Detective Miller testified at trial that Henderson's jaw was swollen, and the injury was fresh. The jury chose to believe the testimony of Henderson and Detective Miller, which was supported by photographs of the injury, and we see no reason to disturb the jury's determination of credibility.
 {¶ 13} Appellant next argues that his failure to conceal himself, change his clothes, or flee the area after his alleged encounter with Henderson supports appellant's version of the facts. Appellant also contends that his resisting arrest was proof of his innocence, in that it showed he believed he was being arrested for no reason, and he would not be able to spend the evening with Mayburger, who was allegedly waiting in the hotel room. Appellant further asserts that, when he was apprehended, he had twice the amount of money Henderson claims he stole, thereby negating his motive to steal Henderson's money. Although these interpretations are one way to view the evidence, the jury apparently construed the evidence differently. The jury was well within its discretion to interpret and weigh the evidence as it did, and we find no reason to disturb its finding. See State v. Higgins, Montgomery App. No. 18974, 2002-Ohio-4679, at ¶ 55 (although the jury was free to interpret this evidence as the defendant urged, it was also free to interpret it the way it did).
 {¶ 14} Appellant also contends that the fact he finally cooperated with Detective Miller and told her the same story that he testified to at trial supports his version of the facts. However, there was one glaring inconsistency between what he told Detective Miller and what he testified to at trial. In his interview with Detective Miller, appellant said repeatedly and clearly that he told Henderson he had an uncle at the Inn Town Hotel, although he said he did not really have an uncle at the hotel and was just playing with Henderson. However, appellant testified repeatedly at trial that it was Henderson who told him he had an uncle at the hotel. Detective Miller testified that appellant never told her anything about going to see Henderson's uncle at the hotel. Henderson also testified that he did not have an uncle at the Inn Town Hotel. There was also an inconsistency between his interview and his trial testimony in that he told Detective Miller that appellant kept asking for $10 or $30, but, at trial, he testified that appellant did not ask for any specific amount of money. Therefore, appellant's claim that his story was consistent throughout is dubious.
 {¶ 15} After reviewing the entire record and weighing the evidence and all reasonable inferences, we find the trier of fact did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Although we are permitted to independently weigh the credibility of the witnesses, we see no reason to question the testimony of Henderson. The jury apparently found Henderson's testimony credible and appellant's not credible. The jury was in the best position to view their testimony and decide which person seemed more credible. This case is not an exceptional case in which the evidence weighs heavily against the conviction. For these reasons, appellant's second assignment of error is overruled.
 {¶ 16} Accordingly, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Peas is affirmed.
Klatt and Watson, JJ., concur.