OPINION
{¶ 1} Defendant-appellant, Ivan Hasley, appeals from a Mahoning County Common Pleas Court judgment denying his Crim.R. 29 motion and convicting him of two counts of felonious assault with firearm specifications, following a bench trial.
 {¶ 2} In the early morning hours of August 18, 2001, John Howley was driving north on Market Street with his friend, Matthew Bocian, as his passenger. Howley stopped his car at a red light at Indianola Avenue and glanced at the mini van stopped next to him. Howley noticed the driver of the van staring at him. He looked away and then looked back. The driver was still looking at him. The driver of the van said to Howley, "What the f * * * are you looking at?" Howley then rolled up his window as the light turned green. Howley took off down Market Street and the van came up quickly behind him. As it passed Howley's car, a bullet came through Howley's driver's side door.
 {¶ 3} The van then swerved into Howley's lane and turned right onto Dewey. Howley followed the van and instructed Bocian to write down its license plate number. After traveling only about a half a block on Dewey, the van stopped and the driver jumped out firing shots at Howley's car. The car was struck six more times. Bocian wrote down the license plate number. Howley made a U-turn and drove away.
 {¶ 4} Howley and Bocian drove back up Market Street where they had noticed a police cruiser. They reported the shooting to the police, along with the license plate number and a description of the driver.
 {¶ 5} The license plate number revealed that the van belonged to Ernestine Cochrane. Detective Ronald Rodway went to Mrs. Cochrane's home to investigate. There he learned that Mrs. Cochrane's husband, Purvis Cochrane, had loaned the van to appellant on the night in question. He also observed that Mr. Cochrane did not fit the description of the driver that Howley had given to police.
 {¶ 6} Detective Rodway then compiled a photo array for Howley to look at. Howley picked appellant's photograph out as the driver of the van who shot into his car. *Page 3 
 {¶ 7} A Mahoning County grand jury indicted appellant on two counts of felonious assault, second-degree felonies in violation of R.C.2903.11(A)(2)(D). Both counts also had firearm specifications attached to them. After numerous changes in counsel, appellant's case proceeded to a bench trial on January 17, 2006. The court found him guilty as charged. The court then sentenced appellant to three years on each felonious assault count, to be served concurrently, and three years on each firearm specification, which it merged together, to be served prior to the felonious assault sentences.
 {¶ 8} Appellant filed a timely notice of appeal on February 3, 2006.
 {¶ 9} Appellant raises two assignments of error, which share a common basis in law and fact. Therefore, we will address them together: They state:
 {¶ 10} "THE TRIAL COURT ERRED IN OVERRULING THE CRIMINAL RULE 29 DEFENSE MOTION FOR JUDGMENT OF ACQUITTAL AS THE EVIDENCE PRESENTED WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN THE APPELLANT'S CONVICTION."
 {¶ 11} "APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 12} Appellant first argues that the court should have granted his Crim.R. 29 motion for acquittal because the state failed to present sufficient evidence identifying him as the shooter.
 {¶ 13} Next, appellant argues that his convictions are against the manifest weight of the evidence. Specifically he alleges that the witnesses were not able to positively identify him as the shooter.
 {¶ 14} An appellate court reviews a denial of a motion to acquit under Crim.R. 29 using the same standard that an appellate court uses to review a sufficiency of the evidence claim. State v. Rhodes, 7th Dist. No. 99-BA-62, 2002-Ohio-1572, at ¶ 9; State v. Carter (1995),72 Ohio St.3d 545, 553, 651 N.E.2d 965.
 {¶ 15} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a *Page 4 
matter of law to support the jury verdict. State v. Smith (1997),80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
 {¶ 16} But when determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 17} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 18} Appellant was convicted of two counts of felonious assault in violation of R.C. 2903.11(A)(2), which provides:
 {¶ 19} "(A) No person shall knowingly do either of the following:
 {¶ 20} "* * *
 {¶ 21} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 22} Appellant's arguments center around the notion that the witnesses' testimony did not positively identify him as the driver of the van and the shooter. The *Page 5 
evidence demonstrated that Howley and Bocian were driving/riding in Howley's car at 2:00 a.m. on the morning of August 18, 2001, when, as they drove away from a red light on Market Street, a black man in a dark-colored mini van shot into Howley's car. (Tr. 15-19, 49-52). Howley and Bocian followed the van onto Dewey in order to record its license plate number and when they did, the driver of the van got out and fired six more shots into Howley's car. (Tr. 18-21, 52-55). The only issue was whether appellant was indeed the driver of the van and thus, the shooter.
 {¶ 23} Plaintiff-appellee, the State of Ohio, established that appellant was the shooter in two ways: (1) by Howley's identification of him; and (2) by testimony that appellant was driving the van on the night in question.
 {¶ 24} First, Rodway testified that he showed Howley a photo lineup containing six photographs. (Tr. 116). Initially, Howley pointed out two photographs, which he told Rodway both looked very similar to the person who had shot into his car. (Tr. 117). One of those photographs was of appellant, while the other was of a deceased man. (Tr. 117). Then, as the two were going to talk to the prosecutor, Howley asked Rodway if he could look at the photographs again. (Tr. 117). Howley then picked appellant out as the shooter. (Tr. 117).
 {¶ 25} Furthermore, Howley testified that while he was stopped at the red light on Market Street, he looked at appellant a couple of times and got a good look at him and that he also got a look at him when appellant got out of the van on Dewey. (Tr. 24). Howley then identified appellant in court as the driver of the van and the shooter. (Tr. 25).
 {¶ 26} Second, Cochrane testified about loaning his wife's van to appellant. He testified that he loaned appellant the van on August 17, 2001, around 9:00 or 10:00 p.m. (Tr. 65-66, 76). In exchange for use of the van, Cochrane stated that appellant gave him drugs. (Tr. 65). Cochrane stated that he was addicted to crack cocaine at the time and sometimes loaned out the van in exchange for drugs or money. (Tr. 65). He stated that he got his van back the next day. (Tr. 66). It was parked in a driveway across the street from appellant's parents' house. (Tr. 71). *Page 6 
Cochrane's testimony then became somewhat unclear. He first stated that he loaned the van to someone else around 2:00 or 4:00 a.m. (Tr. 66, 77-78). However, he later clarified that he did not re-loan the van until 2:00 or 4:00 a.m. on August 19. (Tr. 74-76). Cochrane also testified that at the time, he was on drugs and his memory was not too clear. (Tr. 68-69, 88). But now, since he was sober, his head was clear. (Tr. 88).
 {¶ 27} On cross-examinations, Cochrane stated that during August 2001, he loaned the van out to two or three people on five or six occasions in exchange for crack. (Tr. 87-88). He also stated that the way he knew he lent the van to appellant on August 17, as opposed to some other day, was because that was the day the detective told him the incident occurred. (Tr. 88-89). He then stated that he did not know the date he lent appellant the van. (Tr. 90, 92). However, Cochrane later testified that now, since his head was clear, he could remember the correct date because he remembered going to the house across the street from appellant's parents' house and waiting for appellant to bring him his keys. (Tr. 97). When appellant did not show up, Cochrane tore his steering column apart to start the van. (Tr. 97). Cochrane stated that this made the date stick in his mind. (Tr. 97).
 {¶ 28} Additionally, appellant stipulated that the van belonged to Mrs. Cochrane and that her license plate number was "CPC 5097." (Tr. 104; Ex. 5, 6). And Bocian testified that a photo of Mrs. Cochrane's van depicted the van that was involved in the shooting. (Tr. 59; Ex. 5). Bocian also stated that the license plate number "CPC 5097" was the license plate number he gave to the police. (Tr. 59).
 {¶ 29} We should also note that appellant testified on his own behalf. He denied having anything to do with the shooting. (Tr. 137). He stated that he borrowed Mrs. Cochrane's van a couple of times. (Tr. 139-40). However, he did not remember if he borrowed it on August 17 or 18. (Tr. 140).
 {¶ 30} Given this evidence, the trial court properly denied appellant's Crim.R. 29 motion. Viewing the evidence in a light most favorable to the prosecution, as we are required to do, reveals that the court could have found the elements of felonious *Page 7 
assault beyond a reasonable doubt. The evidence demonstrated that appellant attempted to cause physical harm to Howley and Bocian by means of a deadly weapon. Both Howley and Bocian described the shooting. Howley identified appellant as the shooter, both in a photo lineup and in court. Cochrane testified that he loaned appellant his wife's van on the night in question. Bocian identified Mrs. Cochrane's van and license plate as the van and license plate involved in the shooting. Clearly, this evidence satisfies all of the elements of felonious assault.
 {¶ 31} Furthermore, the court's finding of guilt was not against the manifest weight of the evidence. Although Howley initially thought both appellant's photo and that of another man resembled the shooter, after further consideration, he picked appellant's photo out as the shooter. Additionally, Howley identified appellant in court. And while Cochrane at times seemed unsure of the date he lent appellant his van, at other times he seemed sure that he lent it to appellant on August 17-18. Thus, his credibility was called into question.
 {¶ 32} Although an appellate court is permitted to independently weigh witnesses' credibility when determining whether a conviction is against the manifest weight of the evidence, we must give great deference to the fact finder's determination of credibility. State v. Wright, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing credibility. Id. The trial court evidentially believed Cochrane's testimony that he lent appellant the van on August 17-18 and we will give deference to this determination. Considering this in conjunction with all of the other evidence, the trial court's verdict was not against the manifest weight of the evidence.
 {¶ 33} Accordingly, appellant's two assignments of error are without merit. *Page 8 
 {¶ 34} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1