OPINION
{¶ 1} Defendant-appellant, Marvin Williams, appeals from a Mahoning County Common Pleas Court judgment convicting him of failure to comply with the order or signal of a police officer and the resulting sentence, following a jury trial.
 {¶ 2} On February 6, 2005 at approximately 2:30 p.m., Sergeant Chad Adams of the Northwest Regional Police Department in Lawrence County, Pennsylvania was patrolling Pulaski Township in Pennsylvania. He stopped at the New Castle School of Trades when he noticed a blue Honda Accord in the parking lot. Because it was a Sunday the school was closed. Adams approached the man seated in the driver's seat to inquire about what he was doing there. The man stated that he was in town from D.C., got lost, and was waiting for some friends from Youngstown to meet him and to show him the way to Youngstown. Adams found this peculiar since the car the man was sitting in had Ohio license plates. When Adams asked the driver about this, he stated that he had borrowed the car from a friend.
 {¶ 3} The driver then got out of the car and opened his trunk. When Sergeant Adams approached him, he closed it. Adams asked the driver for identification, but he said he did not have any. Adams ran the license plates and they came back registered to a James Hosey. The driver admitted to Adams that he was not James Hosey. Adams further questioned the driver as to his identity, but he was evasive. Adams called for backup. He then noticed the driver pop a couple of red pills into his mouth. The driver subsequently shoved Sergeant Adams and jumped back in his car. Adams grabbed the man's arm and tried to stop him from leaving, but the man took off.
 {¶ 4} Adams took off with his lights and siren on in pursuit of the Accord. Adams chased the vehicle from Pennsylvania across the border into Coitsville, Ohio. At that time, Detective-Sergeant Keith Brown of Coitsville took over the chase. At one point, the driver of the Accord wrecked into a fence and got out of the car. Brown approached him and ordered him to surrender, but then the driver got back into the Accord and managed to get away. Brown continued to pursue the car into Youngstown. *Page 2 
 {¶ 5} At that time, Youngstown Officer Pedro Bonilla took over the chase for a period of time. Youngstown Officer William Ward then took the lead. The chase proceeded through Youngstown's north side and then through the east side. At one point during the chase, the driver of the Accord slowed down to about ten miles per hour and looked as though he was going to jump from the car. Ward then had a chance to see the driver's face. However, the driver changed his mind and sped up again.
 {¶ 6} While chasing the Accord on McGuffey Road, Ward followed it through a red light at an intersection. As Officer Ward crossed through the intersection, another car struck his police cruiser. He was injured and the chase ended while the Accord got away.
 {¶ 7} Appellant was later arrested in connection with the police chase. Adams, Brown, and Ward each identified appellant as the driver of the Accord.
 {¶ 8} A Mahoning County grand jury indicted appellant on one count of receiving stolen property, a fourth-degree felony in violation of R.C.2913.51(A)(C), and one count of failure to comply with an order or signal of a police officer, a third-degree felony in violation of R.C.2921.331(B)(C)(1)(5)(a)(i). However, it appears the receiving stolen property count was dismissed.
 {¶ 9} The case proceeded to a jury trial on the count of failure to comply with an order or signal of a police officer. The jury found appellant guilty.
 {¶ 10} At appellant's sentencing hearing, he also pled guilty to a charge of theft in another case. The court then sentenced appellant in both cases. The court sentenced appellant to five years in prison on the failure to comply conviction and one year on the theft conviction, to run concurrently.
 {¶ 11} Appellant filed a timely notice of appeal on January 23, 2006.
 {¶ 12} Appellant raises three assignments of error. His first two assignments of error share a common basis in law and fact. Therefore, we will address them together. They state, respectively:
 {¶ 13} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL WHEN THERE WAS INSUFFICIENT *Page 3 
EVIDENCE TO PROVE THE ELEMENTS OF FAILURE TO COMPLY WITH ORDER OR SIGNAL OF POLICE OFFICER, IN VIOLATION OF OHIO REVISED CODE SECTION2921.331(B)(C)(1)(5)(A)(i) [sic.]."
 {¶ 14} "THE APPELLANT'S CONVICTION FOR FAILURE TO COMPLY WITH ORDER OR SIGNAL OF POLICE OFFICER IN VIOLATION OF OHIO REVISED CODE SECTION2921.331(B)(C)(1)(5)(A)(i) [sic] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 15} Appellant first argues that the trial court should have granted his Crim.R. 29 motion for acquittal. He contends that there was insufficient evidence identifying him as the driver of the vehicle that fled and eluded the police. Appellant contends that Adams was unable to provide a description of the driver because he could not describe what the driver was wearing. He also points out that Adams testified that the driver was not wearing a hat, which contradicted Brown's testimony. Appellant further alleges that Brown's identification was unreliable because Brown only observed the driver for four to five seconds. Finally, appellant asserts that Ward's identification was unreliable because it was based on one or two seconds of eye contact made while both vehicles were traveling at high rates of speed.
 {¶ 16} An appellate court reviews a denial of a motion to acquit under Crim.R. 29 using the same standard that an appellate court uses to review a sufficiency of the evidence claim. State v. Rhodes, 7th Dist. No. 99-BA-62, 2002-Ohio-1572, at ¶ 9; State v. Carter (1995),72 Ohio St.3d 545, 553, 651 N.E.2d 965.
 {¶ 17} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, *Page 4 80 Ohio St.3d at 113.
 {¶ 18} The jury convicted appellant of violating R.C. 2921.331(B), which provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." This offense was a third-degree felony because the jury also found that, "[t]he operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property." R.C.2921.331(C)(5)(a)(i).
 {¶ 19} Appellant's entire argument focuses on identity. He claims that the evidence was insufficient to prove that he was the man driving the Accord that eluded the police. Thus, we need only briefly touch upon the other elements.
 {¶ 20} All officers involved testified that they had their lights and sirens on during the chase. (Tr. 242, 270-71, 301, 311). Furthermore, Ward testified that as he was pursuing the Accord through the intersection of McGuffey and Lansdowne, the Accord drove through a red light. (Tr. 318). Ward followed. (Tr. 318). As a result, another car struck his police cruiser. (Tr. 318-19). The collision pushed the police cruiser into a utility pole. (Tr. 319). Ward sustained a fractured hip and a fractured back, which resulted in a four-day hospital stay and a six-month absence from work. (Tr. 319-20).
 {¶ 21} As to appellant's identity, the officers testified as follows.
 {¶ 22} Adams identified appellant as the man driving the Honda Accord involved in the police chase. (Tr. 246). He testified that he talked with appellant for seven or eight minutes in the New Castle School of Trades parking lot. (Tr. 246-47). Adams stated that he was only five to six feet away from appellant. (Tr. 235). He further testified that he ran the Accord's plates and they came back registered to a James Hosey. (Tr. 237). However, appellant admitted to Adams that he was not James Hosey. (Tr. 238).
 {¶ 23} On cross-examination, Adams stated that he could not remember what appellant was wearing that day. (Tr. 250). He also stated that appellant was not wearing a hat. (Tr. 251). *Page 5 
 {¶ 24} Adams testified that appellant jumped into the Accord and took off after Adams tried to stop him. (Tr. 239-40). Adams let appellant go when he saw what appeared to be a gun on the floor of the car. (Tr. 239). Adams followed the Accord from the New Castle School of Trades parking lot into Coitsville, Ohio. (Tr. 240-41). When Adams saw Coitsville police following him, he let the Coitsville police take the lead in the chase. (Tr. 242-43).
 {¶ 25} Brown was the Coitsville officer who took over the chase. He testified that he was dispatched regarding the pursuit of a "greenish" Honda. (Tr. 268). Brown stated that he took over as the lead car in the pursuit once the Accord entered his jurisdiction. (Tr. 268-69).
 {¶ 26} Brown testified that at one point the Accord tried to make a sharp turn and went up onto a curb and hit a fence. (Tr. 272-73). He saw appellant get out of the car. (Tr. 273). Brown ordered him to get down, but instead appellant got back in the Accord and managed to get away, starting the pursuit again. (Tr. 273). While appellant was out of the car, Brown was face-to-face with him for three to five seconds. (Tr. 274). Brown stated that it was light outside, approximately 2:45 p.m. (Tr. 275). Brown identified appellant as the driver. (Tr. 275).
 {¶ 27} Brown testified that after the pursuit began again, appellant drove into Youngstown where Youngstown police took over the chase. (Tr. 277). Brown stayed involved with the chase, however, and at one point the driver's side of his cruiser was within two feet of the driver's side of the Accord. (Tr. 279). Brown stated that he then got another look at appellant. (Tr. 279).
 {¶ 28} On cross-examination, Brown testified that appellant was wearing some type of hat or "do-rag" on his head and blue jeans. (Tr. 288).
 {¶ 29} Bonilla was the next officer to take over the chase. He stated that he heard over his police radio that a blue or blue-green Honda was involved in a police chase. (Tr. 295). Bonilla picked up the chase on Youngstown's east side. (Tr. 295-96). He pursued the Accord to the north side where he lost sight of it for 20 to 30 seconds. (Tr. 296). Bonilla stated that he caught up with the Accord again and that he was sure it was the same vehicle. (Tr. 296). He stated that Ward then took over *Page 6 
the chase on Youngstown's north side. (Tr. 297).
 {¶ 30} Ward stated that he heard the police radio broadcasting a police chase involving a grayish-blue Honda. (Tr. 309). He stated that he joined the chase as Bonilla was following the vehicle and then took over the lead. (Tr. 310). Ward testified that at one point, appellant slowed down, opened his door, stuck out his leg, and turned around and looked at him, as if appellant was going to get out of the car. (Tr. 313). At this point, Ward stated that he was 20 to 25 feet from appellant. (Tr. 314). Ward stated that appellant looked at him and made direct eye contact for a second or two. (Tr. 314). Ward stated that appellant then changed his mind about getting out of the car and continued driving. (Tr. 315). Ward also testified that several times throughout the chase, appellant looked back at him and made eye contact. (Tr. 317). Ward identified appellant as the driver of the Accord. (Tr. 315).
 {¶ 31} On cross-examination, Ward testified that appellant was wearing a coat. (Tr. 323). He stated that he could not remember whether appellant was wearing a hat or not. (Tr. 323).
 {¶ 32} All three officers who had a chance to see the driver of the Accord identified appellant as the driver. This identification coupled with the other evidence discussed above, viewed in a light most favorable to the prosecution, supports all of the elements of failure to comply with an order or signal of a police officer. Thus, sufficient evidence existed to support the court's denial of appellant's Crim.R. 29 motion.
 {¶ 33} Appellant further argues that his conviction was against the weight of the evidence. He bases this contention on the alleged inconsistent testimony regarding his identification.
 {¶ 34} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of thegreater *Page 7 amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id., at 390.
 {¶ 35} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 36} Appellant points to inconsistencies in the officers' testimony in support of his position. For instance, he notes that Adams testified that the driver was not wearing a hat, while Brown stated that he was. Additionally, he points out that the officers' descriptions of the car ranged from blue to greenish to grayish-blue.
 {¶ 37} These inconsistencies, however, are minor when compared to the fact that all three officers viewed the driver on separate occasions and all three identified appellant as the driver. Furthermore, the officers as a group had a continuous view of the Accord, but for 20 to 30 seconds when Bonilla lost temporary sight of him. And Bonilla stated that he was sure that the Accord that he caught up with was the same Accord that he was initially following.
 {¶ 38} This case hinged on the officers' identifications of appellant. Thus, their credibility was the main issue. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must give great deference to the fact finder's determination of witnesses' credibility. State v. Wright, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id.
 {¶ 39} Each of the officers who came in contact with appellant identified him as the driver of the Accord involved in the police chase. Adams spent seven to eight minutes talking with appellant. Brown looked directly at appellant for three to five seconds. And Ward made direct eye contact with appellant for a second or two on *Page 8 
several occasions throughout the chase. Furthermore, this chase occurred in the middle of the afternoon when it was light outside, so sufficient lighting was not an issue. Given this evidence, we cannot conclude that the jury clearly lost its way in finding that appellant was the driver of the car involved in the police chase. Thus, the jury's verdict was not against the manifest weight of the evidence.
 {¶ 40} Accordingly, appellant's first and second assignments of error are without merit.
 {¶ 41} Appellant's third assignment of error states:
 {¶ 42} "THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING THE MAXIMUM TERM OF INCARCERATION, WHICH WAS CONTRARY TO THE LAW IN EFFECT AT THE TIME OF THE SENTENCING OF APPELLANT."
 {¶ 43} Appellant argues that the trial court erred in sentencing him to a maximum five-year sentence after making judicial findings of fact. He relies on Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403, and State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856.
 {¶ 44} The trial court sentenced appellant on December 28, 2005. In sentencing appellant, the trial court relied on a statutory provision that the Ohio Supreme Court later held to be unconstitutional. Specifically, the trial court relied on R.C. 2929.14(C) — it found that appellant committed the worst form of the offense and that he possessed the greatest likelihood of committing future offenses. Therefore, the court found that the maximum sentence was appropriate. Two months later,Foster found this provision unconstitutional. Foster, 109 Ohio St.3d at paragraph one of the syllabus (Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and Blakely, 542 U.S. 296, followed.)
 {¶ 45} The Ohio Supreme Court held that the provisions it found to be unconstitutional could be severed. Id., at paragraphs two and four of the syllabus. Since the provisions could be severed, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id., at paragraph seven of the syllabus. *Page 9 
 {¶ 46} In this case, the trial court relied on R.C. 2929.14(C) in imposing a maximum sentence on appellant. However, appellant did not object at the time of sentencing. Thus, he has forfeited this issue on appeal. See State v. Payne, 114 Ohio St.3d 502, 873 N.E.2d 306,2007-Ohio-4642, at ¶ 21 ("[W]e hold that a lack of an objection in the trial court forfeits the Blakely issue for purposes of appeal when the sentencing occurred after the announcement of Blakely.") Like the defendant in Payne, appellant's sentencing occurred after the United States Supreme Court's decision in Blakely, 542 U.S. 296, but before the Ohio Supreme Court's decision in Foster, 109 Ohio St.3d 1.
 {¶ 47} Because appellant forfeited this issue, we must apply the plain error analysis here. Id. at ¶ 24. Plain error is one in which but for the error, the outcome would have been different. State v. Long (1978),53 Ohio St.2d 91, 97, 372 N.E.2d 804. Plain error should be invoked only to prevent a clear miscarriage of justice. State v. Underwood (1983),3 Ohio St.3d 12, 14, 444 N.E.2d 1332.
 {¶ 48} No plain error occurred here. Appellant cannot establish that but for the Blakely error, he would have received a more lenient sentence. See Payne, at ¶ 25, citing Crim.R. 52(B). Thus, we must affirm appellant's sentence. Accordingly, appellant's third assignment of error is without merit.
 {¶ 49} For the reasons stated above, the trial court's judgment is hereby affirmed.
Waite, J., concurs.
 DeGenaro, P.J., concurs. *Page 1