[Cite as *State v. Shugart*, 2011-Ohio-6218.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09 MA 215 |
| | ) | |
| JEFFREY SHUGART, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 09CR567

JUDGMENT: Affirmed

APPEARANCES:
For Plaintiff-Appellee

Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant

Attorney Mark Verkhlin
839 Southwestern Run
Youngstown, Ohio 44514

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: November 29, 2011

DONOFRIO, J.

{¶1}  Defendant-appellant, Jeffrey Shugart, appeals from a Mahoning County Common Pleas Court judgment convicting him of one count of aggravated assault following a jury trial.

{¶2}  In the late hours of May 19, 2009, Arnold Shiflett, accompanied by Lawrence Sinkfield, David Shovlin, and Amanda Erck, went to Derrick Duvall's house to borrow a tire iron to fix a flat tire.  Duvall is Shiflett's uncle and next-door neighbor.  At the time, appellant had been staying with Duvall for approximately one week.

{¶3}  Appellant answered the door and told Shiflett that Duvall did not want any company.  The two exchanged words.  Shiflett entered the house.  A fight then ensued between the two men.  Sinkfield entered the house too and became involved in the affray.  Appellant ended up on the ground and grabbed a knife.  By this time, Duvall had entered the room and attempted to break up the fight.  During the struggle, appellant stabbed Duvall in the arm and stabbed Sinkfield in the stomach.

{¶4}  A Mahoning County Grand Jury indicted appellant on four counts of felonious assault, two counts in violation of R.C. 2903.11(A)(2)(D) and two counts in violation of R.C. 2903.11(A)(1)(D), all second-degree felonies.

{¶5}  The case proceeded to trial where the jury found appellant not guilty of the felonious assault counts.  However, the jury did find appellant guilty of the lesser included offense of aggravated assault of Lawrence Sinkfield, in violation of R.C. 2903.12(A)(1), a fourth-degree felony.  The trial court subsequently sentenced appellant to 14 months in prison.

{¶6}  Appellant filed a timely notice of appeal on December 23, 2009.

{¶7}  Appellant now raises one assignment of error, which states:

{¶8}  "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN, AFTER A JURY TRIAL, IT FOUND DEFENDANT-APPELLANT, JEFFREY SHUGART[,] GUILTY OF AGGRAVATED ASSAULT IN VIOLATION OF R.C. 2903.12(A)(2) [sic.] BEYOND A REASONABLE DOUBT, WHEN SUCH A CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶9}  Appellant argues here that the manifest weight of the evidence does not support his conviction.  Appellant contends that the evidence showed that Sinkfield

forced his way into the house and began to punch him in the face. He asserts that the evidence demonstrated that he acted in self-defense when he stabbed Sinkfield.

**{¶10}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.

**{¶11}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin* (1983), 20 Ohio App.3d 172, 175. This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, at ¶49, citing *State v. Hill* (1996), 75 Ohio St.3d 195, 205; *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

**{¶12}** The jury convicted appellant of aggravated assault in violation of R.C. 2903.12(A)(1), which provides:

**{¶13}** "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by

the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

{¶14} "(1) Cause serious physical harm to another[.]"

{¶15} We must consider all of the evidence presented at trial to determine whether appellant's conviction was supported by the manifest weight of the evidence.

{¶16} The first witness to testify was Arnold Shiflett, Derrick Duvall's nephew. On the day in question Shiflett was living at his grandmother's house, which is next door to Duvall's house. He stated that he needed to borrow a tire iron to fix a flat tire, so he called his uncle's house that evening. (Tr. 195-96). Appellant answered the phone and would not allow Shiflett to speak with Duvall. (Tr. 197). Shiflett told appellant he was coming over. (Tr. 197). He was accompanied by Lawrence Sinkfield, Amanda Erck, and David Shovlin. (Tr. 195). Shiflett testified that when he got to Duvall's house, appellant, who seemed angry and drunk, met him at the door. (Tr. 199). Shiflett stated that appellant would not let him in the house, but while appellant was yelling he walked right in. (Tr. 201-202). Shiflett stated that he and appellant exchanged words and then appellant grabbed him by the neck and pushed him into the wall. (Tr. 201). He testified that he did not hit, push, or grab appellant first. (Tr. 229).

{¶17} A struggle then ensued between appellant and Shiflett. (Tr. 203). Shiflett testified that Sinkfield came into the house and tried to break up the fight. (Tr. 204). Shiflett then noticed a black "flip" knife hit the ground, although he was unsure where it came from. (Tr. 205-206). Shiflett stated that appellant stabbed Sinkfield in the belly. (Tr. 207-208, 210). However, he stated he did not physically see the knife go into Sinkfield's belly. (Tr. 225). Shiflett stated that at some point Duvall came into the room and appellant stabbed him in the arm, although he did not actually see the knife go into Duvall's arm. (Tr. 209-210, 225). He testified that appellant was on the ground at the time making stabbing motions with the knife. (Tr. 209-210).

{¶18} Shiflett also testified that for the year that he had been living next door to Duvall, he came and went from Duvall's house ten times a day and Duvall never told him that he was not welcome. (Tr. 198-99). He stated that he and Duvall have a

close relationship and he does not ask Duvall's permission to go to his house. (Tr. 218).

**{¶19}** Amanda Erck, Shiflett's girlfriend, testified next. She stated that on the night in question she was with Shiflett, Sinkfield, and Shovlin. (Tr. 235). She stated that Shovlin had a flat tire so the four went to Duvall's house to borrow a tire iron. (Tr. 235-36). When they arrived at Duvall's house, Erck stated that she got out of the car but did not go into the house. (Tr. 237). She stated that when Shiflett walked into the house, she heard yelling and fighting. (Tr. 237). She said that Shiflett did not push his way into the house, but merely walked around appellant. (Tr. 238). Erck stated that Sinkfield went into the house to break up the fight. (Tr. 239). The next thing she witnessed was screaming and then everyone ran out of the house. (Tr. 240). Erck stated that appellant came up to her and told her he was sorry. (Tr. 242-43).

**{¶20}** Lawrence Sinkfield was the next witness. He stated that on the night in question he went with Shiflett, Erck, and Shovlin to Duvall's house to retrieve tools to fix Shovlin's flat tire. (Tr. 254). Sinkfield stated that appellant was at the door when Shiflett went in. (Tr. 255). He stated that Shiflett did not push his way into the house. (Tr. 255). Sinkfield stated that he followed Shiflett into the house. (Tr. 255). Once Shiflett was inside, Sinkfield stated that Shiflett and appellant got into a verbal argument, which resulted in appellant pushing Shiflett. (Tr. 256). He stated that the two men then began to wrestle. (Tr. 256). When Sinkfield saw appellant grab Shiflett by the neck, he tried to grab Shiflett and pull him towards the door. (Tr. 256-57). Sinkfield testified that he tried to push appellant away. (Tr. 257). He stated that appellant then fell to the ground and began searching for the steak knife that Sinkfield had seen in appellant's shirt pocket. (Tr. 258, 264). Sinkfield testified that when appellant found the knife, he began to swing it. (Tr. 258). He then noticed that Duvall was bleeding. (Tr. 258). Next, he realized that he was bleeding from his side. (Tr. 259).

**{¶21}** Derrick Duvall, Shiflett's uncle and appellant's friend, testified next. On the night at issue, Duvall stated that he was at home with Bridgette White, appellant,

and his daughter. (Tr. 280). Appellant had been staying at Duvall's house for a couple of days. (Tr. 281). Duvall told appellant he did not want anyone in the house and then he went to bed. (Tr. 280-81). White was also in bed. (Tr. 280-81). Duvall stated that while he was in bed, he heard arguing. (Tr. 282). When he went to see what was going on, Duvall saw appellant, Shiflett, and Sinkfield fighting. (Tr. 283). He testified that he went to break up the fight and got stabbed in the arm. (Tr. 283). Duvall stated that he did not believe that appellant stabbed intentionally. (Tr. 288-89). He believed that it was an accident. (Tr. 288).

{¶22} Duvall also testified that Shiflett had been to his house "quite a few" times. (Tr. 282). The only time Duvall did not permit Shiflett at his house was when he was drinking. (Tr. 282). When asked whether Shiflett had permission to be in his house, Duvall answered, "No. But he's my nephew, I mean." (Tr. 292).

{¶23} Bridgette White, Duvall's girlfriend, was the next witness. She testified that she was asleep in Duvall's house on the night in question when she awoke to the sound of yelling. (Tr. 298-99). She went to the back door and saw a bunch of people and Duvall told her to call the police. (Tr. 299-300).

{¶24} Youngstown Police Officer Robert DiMaiolo was the state's final witness. He responded to a call of a stabbing at Duvall's house. (Tr. 313). Officer DiMaiolo saw appellant running behind the house and apprehended him. (Tr. 314). Appellant told Officer DiMaiolo that he stabbed Duvall by accident. (Tr. 315).

{¶25} Appellant testified in his own defense. He stated that at the time in question, he had been staying with Duvall for six or seven days. (Tr. 333). Appellant testified that prior to May 19, while he was at Duvall's house, people had been in the house, his cell phone was stolen, and a gun was pulled on him. (Tr. 333-34). On the night of May 19, appellant testified that Duvall told him he did not want any company because he was going to lay down. (Tr. 336). Appellant stated that he was sitting at the kitchen table when he noticed four people walking in the driveway. (Tr. 336-37). He testified that all four came to the back door. (Tr. 337). Appellant told them that Duvall was sleeping and did not want company. (Tr. 337-38).

{¶26} Appellant stated that Shiflett then told him to move out of the way and pushed him as Shiflett tried to force his way into the house. (Tr. 338). Appellant pushed him in response. (Tr. 338). At that time, appellant stated, Sinkfield started punching him in the face. (Tr. 338). He testified that he fell to the floor where Sinkfield choked and kicked him to the point where he began to lose consciousness. (Tr. 339). Appellant then reached into the sink and grabbed a knife. (Tr. 340). At that point, appellant stated, Duvall entered the room and he accidentally stabbed Duvall in the arm. (Tr. 340).

{¶27} Appellant denied ever choking Shiflett. (Tr. 352). He further testified that the only way to free himself from Sinkfield was to stab him. (Tr. 356). He admitted that he did not see any weapons on Sinkfield or Shiflett, although he also stated that he believed they might have had them. (Tr. 356, 362). Appellant also admitted that when the police questioned him, he did not mention that Sinkfield and Shiflett were beating him up. (Tr. 359).

{¶28} This evidence supports appellant's conviction. This case turns strictly on credibility. There was no question that appellant argued and fought with Shiflett and Sinkfield and that appellant stabbed Sinkfield. Instead, the only issue was whether the events that led to the stabbing were as Sinkfield and Shiflett testified or as appellant testified.

{¶29} Appellant asserts that the evidence proved that he acted in self-defense. The affirmative defense of self-defense contains three elements. The defendant must prove that he: (1) was not at fault in creating the situation that gave rise to the fight; (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that the use of force was his only means of escape; and (3) did not violate any duty to retreat or avoid the danger. *State v. Williford* (1990), 49 Ohio St.3d 247, 249, citing *State v. Robbins* (1979), 58 Ohio St.2d 74, at paragraph two of the syllabus.

{¶30} As the testimony indicates, there are two versions regarding the events on the night of May 19. Sinkfield's and Shiflett's version do not satisfy the elements necessary to support self-defense. Their testimony indicated that appellant was at

fault in creating the situation and that appellant did not have a bona fide belief that he was in imminent danger of death or great bodily harm. Appellant's version, on the other hand, could support a self-defense claim. His testimony indicated that he was not at fault in creating the situation, he had a bona fide belief that he was in imminent danger of great bodily harm, and his only means of escape from such danger was in the use of force. Therefore, it became a credibility question for the jury to determine which version of the events to believe.

{¶31} Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, great deference must be given to the fact finders' determination of witnesses' credibility. *State v. Wright*, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id.

{¶32} In sum, we cannot find that the jury lost its way in finding appellant guilty of aggravated assault. Their decision was based on their credibility determination.

{¶33} Accordingly, appellant's sole assignment of error is without merit.

{¶34} For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

Waite, P.J., concurs.