OPINION
{¶ 1} Defendant-appellant, Armando Ceasar Rodriguez-Baron, appeals from a Mahoning County Common Pleas Court judgment convicting him of possession of marijuana following a jury trial.
 {¶ 2} On May 17, 2005, the Alcohol, Tobacco, and Firearms Task Force executed a search warrant at Daniel Morales's home in Youngstown. The task force broke down the door. In the house, they found Morales, his wife, and their three children. They also found appellant and co-defendant Frank Deltoro in a bedroom.
 {¶ 3} Under the stairs in the basement, officers located a duffel bag with a 35-pound brick of marijuana. The bag had the name "Deltoro" on it. They also found a black trash bag containing 24 baggies each containing approximately one pound of marijuana. Officers also found a scale and more baggies nearby. Throughout the rest of the house, officers located more marijuana in smaller quantities hidden in various places.
 {¶ 4} According to Morales's testimony, appellant, Deltoro, and two other men arrived at his house on May 13, 2005. In the trunk of their car, the men had clothes and two bricks of marijuana. The men unloaded the marijuana and took it to the basement of Morales's house. Appellant and Deltoro spent the night there. The next day all of the men, including appellant, went into Morales's basement and separated, weighed, and bagged one of the bricks of marijuana. They did not get around to separating the other brick of marijuana.
 {¶ 5} On May 26, 2005, a Mahoning County grand jury indicted appellant, Deltoro, and Morales on one count of possession of marijuana, a second-degree felony in violation of R.C. 2925.11(A)(C)(3)(f), and one count of trafficking in marijuana, a first-degree felony in violation of R.C. 2925.03(A)(2)(C)(3)(f).
 {¶ 6} Appellant and Deltoro filed a motion requesting that the trial court compel the state to provide them with the identity of its confidential informant (CI). This led to the first appeal in this case on the state's appeal of the trial court's order that it was required to disclose the CI's identity to appellant and Deltoro. See State v.Deltoro, 165 Ohio App.3d 750, 848 N.E.2d 558, 2006-Ohio-1280. The parties *Page 2 
eventually entered into an agreement. In exchange for not having to reveal the CI's identity, the state agreed to drop the trafficking charge and prosecute appellant and Deltoro only on the possession charge. In a June 29, 2006 judgment entry, the court sustained the state's motion to dismiss the trafficking in marijuana charge.
 {¶ 7} On January 17, 2007, appellant filed a motion for relief from prejudicial joinder. He alleged that the state's witnesses were going to testify that Deltoro was in possession of written statements implicating himself and, by association, implicating appellant. The trial court denied the motion.
 {¶ 8} The trial proceeded to a joint jury trial solely on the possession of marijuana count. Morales pleaded guilty to conspiring to traffic marijuana and testified against appellant and Deltoro. The jury found both appellant and Deltoro guilty. The trial court subsequently sentenced appellant to eight years in prison.
 {¶ 9} Appellant filed a timely notice of appeal on May 16, 2007.
 {¶ 10} Appellant raises two assignments of error, the first of which states:
 {¶ 11} "THE TRIAL COURT VIOLATED RODRIGUEZ-BARON'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR POSSESSION OF MARIJUANA, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 12} Appellant argues that his conviction was against the weight of the evidence. He points out that he was arrested at Morales's house and that is where the marijuana was located. Additionally, no marijuana was found on appellant's person. Appellant argues that the only testimony that linked him to the marijuana came from his co-defendant, Morales. And he asserts that Morales only agreed to testify against him as part of a plea deal. Thus, appellant asserts that Morales's testimony was unreliable.
 {¶ 13} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of *Page 3 
justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. "Weight of the evidence concerns `'the inclination of the greater amountof credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 14} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 15} The jury convicted appellant of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(f), which provides:
 {¶ 16} "(A) No person shall knowingly obtain, possess, or use a controlled substance.
 {¶ 17} "* * *
 {¶ 18} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 19} "* * *
 {¶ 20} "(3) If the drug involved in the violation is marihuana * * * whoever violates division (A) of this section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:
 {¶ 21} "* * *
 {¶ 22} "(f) If the amount of the drug involved equals or exceeds twenty thousand grams, possession of marihuana is a felony of the second degree, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the second degree."
 {¶ 23} The evidence at trial revealed the following.
 {¶ 24} Agent Ryan Davis, of the Alcohol, Tobacco, Firearms, and Explosives (ATF) Task Force, was the head investigator in the search of Morales's house. *Page 4 
Agent Davis testified that upon arriving at Morales's house, he announced his presence and when no one responded, his team rammed open the door. (Tr. 315). Agent Davis encountered Morales in the breezeway. (Tr. 315). He found Mrs. Morales in the living room. (Tr. 315). In one of the bedrooms, Agent Davis found Morales's three children. (Tr. 315). And in another bedroom, Agent Davis found appellant and Deltoro. (Tr. 315-16). Everyone found in the house was taken outside. (Tr. 315-16).
 {¶ 25} After everyone was out of the house, Agent Davis sent Officer Brian Cionni and his police dog into the house so that the dog could check for drugs. (Tr. 318). Agent Davis stated that Officer Cionni informed him that the dog indicated drugs were present under the basement stairs. (Tr. 319). There he found a large, black trash bag full of marijuana and a duffel bag containing a large brick of marijuana. (Tr. 319-20). The trash bag contained 24 individual baggies of marijuana each containing approximately 460 grams, or approximately one pound, of marijuana. (Tr. 322-23, 325-26). The brick of marijuana weighed approximately 35 pounds. (Tr. 320). Agent Davis stated that the tag on the duffel bag read, "Deltoro/FR." (Tr. 321).
 {¶ 26} Agent Davis further testified as to what else was found in the house. A scale, more baggies, and marijuana residue were found on a table in the basement. (Tr. 330). A shoebox containing three baggies of marijuana was found in one of the bedrooms. (Tr. 331). One to two pounds of marijuana was found in a crock pot box in the living room closet. (Tr. 331). And a bag of marijuana was found inside a glove on the living room coffee table. (Tr. 332).
 {¶ 27} Morales testified next. He stated that early on the morning of May 14, 2005, four men showed up at his house: Giovanni, Eddie, Deltoro, and appellant. (Tr. 395). Morales stated that prior to that time the only one of the four men that he knew was Giovanni. (Tr. 396). Morales testified that Giovanni knocked on his door and told him to open his garage door, which he did. (Tr. 397). Morales stated that the men backed their car into his garage and opened the trunk. (Tr. 397). Inside the *Page 5 
trunk, Morales saw suitcases and marijuana. (Tr. 397). He stated that all five men gathered around the trunk. (Tr. 397). Morales stated that the men then unloaded the packages, some of which contained clothes and others of which contained marijuana. (Tr. 397-98). Morales stated that there were two bricks of marijuana, one in a black duffel bag and another just laying on top of some packages. (Tr. 398-99). The men brought everything into Morales's basement and stored it under the stairs where they left it for the night. (Tr. 399). Morales stated that appellant and Deltoro spent the night at his house. (Tr. 400).
 {¶ 28} Morales testified that the next day Giovanni arrived at his house with a box of Glad bags and scales. (Tr. 400). Morales stated that he, Giovanni, Eddie, Deltoro, and appellant all went into his basement and began bagging up the marijuana. (Tr. 401). He testified that each of the men grabbed bags and filled them with a pound of marijuana. (Tr. 402-403). Morales specifically stated that appellant was involved in this process. (Tr. 403, 404). He stated that the group filled between 20 and 28 bags. (Tr. 403). This job took a couple of hours. (Tr. 405). After the group finished, Morales stated that he put the one-pound bags into a garbage bag and stored it back under his basement stairs. (Tr. 405). He stated that the group only broke up one of the two bricks of marijuana. (Tr. 405). They kept the other brick under the stairs. (Tr. 405). Morales stated that the group did nothing further with the marijuana; it remained under the stairs until the police confiscated it. (Tr. 407-409). The group then discussed how they were going to distribute the marijuana. (Tr. 406).
 {¶ 29} Two days later, around 10:30 a.m., Morales stated that the police showed up at his house. (Tr. 409). Morales testified that he yelled to appellant that the police were there and appellant and Deltoro ran into a bedroom and locked the door. (Tr. 409). Morales testified that the marijuana found in smaller quantities throughout the house was his personal stash. (Tr. 410-11).
 {¶ 30} Morales admitted that he was charged in this case too and that he was testifying as part of a plea deal. (Tr. 411-12). He stated that appellant and Deltoro *Page 6 
had wanted him to take the blame for them, but he would not do it. (Tr. 414). Morales admitted that he could have lost his house and his motorcycle as a result of his involvement in this case. (Tr. 415, 421). And he admitted that his plea deal provided that the state agreed to dismiss the possession of marijuana count that he was facing, agreed to amend the trafficking count to conspiracy, and agreed to recommend community control. (Tr. 426). Additionally, the plea deal provided that the state would vacate the forfeiture specification. (Tr. 427).
 {¶ 31} Next, Officer Cionni testified. Officer Cionni stated that he has a K-9 partner named Robby. Officer Cionni stated that Robby is trained to search for drugs and to indicate to Officer Cionni when he finds them. (Tr. 451). He testified that when he gave Robby the command to search for drugs in Morales's house, Robby indicated that drugs were present under the basement stairs, in a box in the living room closet, in a glove on the coffee table, and in a box in a bedroom closet. (Tr. 451-55).
 {¶ 32} Finally, several other ATF agents and officers testified regarding their roles in the search. Their testimony merely corroborated Agent Davis's testimony regarding what items were found during the search.
 {¶ 33} Given this evidence, we cannot conclude that the jury's verdict was against the weight of the evidence. It is true that Morales's testimony was the only evidence that directly linked appellant to the marijuana. However, Morales specifically testified that appellant was one of the men who showed up at his house with two bricks of marijuana in the trunk, that appellant helped to unload the marijuana into his basement, and that appellant participated in dividing up and weighing the marijuana. Thus, Morales's testimony clearly implicated appellant in possession of the marijuana.
 {¶ 34} Whether to believe Morales's testimony was a question for the jury. Although an appellate court is permitted to independently weigh witnesses' credibility when determining whether a conviction is against the manifest weight of the evidence, we must give great deference to the fact finder's determination of *Page 7 
credibility. State v. Wright, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing credibility. Id. The jury heard Morales explain that he was testifying as a part of a plea deal. They knew that because of his cooperation with the state, some of the charges against him were dropped and the penalties he faced were less severe. The jury was then able to take these facts into consideration when weighing the credibility of Morales's testimony. We will not second-guess the jury's determination that Morales's testimony was credible. Therefore, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice.
 {¶ 35} Accordingly, appellant's first assignment of error is without merit.
 {¶ 36} Appellant's second assignment of error states:
 {¶ 37} "THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING RODRIGUEZ-BARON'S TRIAL TO BE JOINED WITH CODEFENDANT DELTORO'S TRIAL."
 {¶ 38} Here appellant argues that the trial court erred in refusing to sever his trial from Deltoro's trial. He claims that his conviction was a result of "guilty by association." He points out that the duffel bag containing a 35-pound brick of marijuana had Deltoro's name on it. Appellant also points out that there was no testimony that any marijuana was found on his person. Again, appellant asserts that the only evidence connecting him to the marijuana was Morales's testimony. Thus, he concludes that his conviction was based on his association with Deltoro.
 {¶ 39} Generally, the law favors joinder of codefendants for trial. "Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." State v. Thomas (1980),61 Ohio St.2d 223, 225, 400 N.E.2d 401. However, in some cases joinder can be prejudicial to a defendant. Crim. R. 14 provides for relief from *Page 8 
prejudicial joinder, stating that "[i]f it appears that a defendant * * * is prejudiced by a joinder * * * of defendants * * * for trial * * *, the court shall * * * grant a severance of defendants, or provide such other relief as justice requires."
 {¶ 40} An appellate court reviews a trial court's decision on joinder for abuse of discretion. State v. Bundy, 7th Dist. No. 02-CA-211,2005-Ohio-3310, at ¶ 55. Abuse of discretion connotes more than an error of law or fact; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144. We will not conclude that a trial court abused its discretion in refusing to grant severance where the prejudicial aspects of joinder are too general and speculative. Bundy,2005-Ohio-3310, at ¶ 55. "The test is `whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way-by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever. * * *'" State v.Schiebel (1990), 55 Ohio St.3d 71, 89, 564 N.E.2d 54, quoting UnitedStates v. Castro (C.A.9, 1989), 887 F.2d 988, 996.
 {¶ 41} In this case, appellant can point to no prejudice suffered as a result of his joint trial with Deltoro. If appellant had a separate trial, the evidence offered against him would have been exactly the same as in his joint trial. There was no evidence that was offered only against Deltoro. Morales would have still testified that appellant showed up at his house with three other men and marijuana in the trunk of their car, that appellant helped to unload the marijuana, and that appellant helped to divide the marijuana into baggies. Furthermore, appellant has not asserted that he suffered a violation of any rights as a result of the joinder of his trial with Deltoro's trial. Thus, the trial court did not abuse its discretion in denying appellant's request for a separate trial.
 {¶ 42} Accordingly, appellant's second assignment of error is without merit.
 {¶ 43} For the reasons stated above, the trial court's judgment is hereby affirmed. *Page 9 
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1