OPINION
{¶ 1} Defendant-appellant Ashaja Reese appeals the decision of the Youngstown Municipal Court finding her guilty of menacing, a violation of R.C. 2903.22(A), a fourth degree misdemeanor. Four issues are raised in this appeal. First, whether the evidence was sufficient to support the elements of the offense. Second, whether the conviction was against the manifest weight of the evidence. Third, whether the prosecutor's comments in closing arguments constituted reversible prosecutorial misconduct. Fourth, whether the trial court erred in failing to give Reese credit for time served. For the reasons expressed below, the conviction is hereby affirmed; however, the judgment of sentence is modified to give Reese credit for the 45 days she served while awaiting trial.
 STATEMENT OF THE CASE {¶ 2} On October 15, 2007, Professor Molly Sergi was teaching a sociology class in Moser Hall at Youngstown State University in Mahoning County, Ohio. Reese, a student in that class, became disruptive and Sergi asked her to leave. However, Reese refused to leave and called Sergi a "bitch." Sergi then proceeded to go to the dean's office to have the administrative assistant, Steve Katros, call security so that Reese could be escorted from the class. Reese followed Sergi to the dean's office and a verbal altercation ensued; Reese was in Sergi's face, waving her arms. Katros called security; however, Reese left prior to security arriving.
 {¶ 3} As a result of the October 15, 2007 altercation, a complaint was filed in Youngstown Municipal Court charging Reese with assault, a violation of R.C. 2903.13(A), a first degree misdemeanor; and menacing, a violation of R.C. 2903.22(A), a fourth degree misdemeanor. 10/19/07 Complaint. A warrant was then issued for her arrest.
 {¶ 4} On October 22, 2007, Sergi and Reese once again encountered one another in Moser Hall and Reese allegedly threatened Sergi. Katros witnessed the encounter and called security. Security arrived and arrested Reese on the warrant. *Page 3 
 {¶ 5} At some point a third charge was added, aggravated menacing, a violation of R.C. 2903.21, a first degree misdemeanor; this charge resulted from Reese's conduct on October 22, 2007. A jury trial occurred on all three charges on February 1, 2008. Reese was found guilty of menacing, but not guilty of assault or aggravated menacing.
 {¶ 6} Sentencing occurred on March 10, 2008; Reese was sentenced to 14 days in jail and she was placed on intensive supervised two years probation. 01/02/08 Amended J.E. (to comply with State v. Baker,119 Ohio St.3d 197, 2008-Ohio-3330). The trial court denied Reese's request for credit for the 45 days she spent in jail awaiting trial. She timely appealed the conviction and sentence and the trial court granted a stay of execution.
 FIRST ASSIGNMENT OF ERROR {¶ 7} "THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION."
 {¶ 8} In reviewing a sufficiency challenge, this court, after viewing the evidence in the light most favorable to the prosecution, must determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Leonard, 104 Ohio St.3d 54, 67, 2004-Ohio-6235, ¶ 77, quotingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. This is a test of the adequacy of the evidence, not credibility of the evidence. State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52.
 {¶ 9} In accordance with that law, we must determine whether the state offered sufficient evidence that on October 15, 2007, Reese committed each element of menacing. Menacing, as defined in R.C. 2903.22(A), means:
 {¶ 10} "No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." R.C. 2903.22(A).
 {¶ 11} Reese contends that the evidence did not indicate that she knowingly caused Sergi to believe she would cause physical harm to Sergi or Sergi's family. The state disagrees with that contention. *Page 4 
 {¶ 12} Evidence was submitted at trial that on October 15, 2007, after Reese became disruptive in class three times, she was asked to leave the class. Reese, however, refused. Reese admitted that at that point she called Sergi a "bitch." (Tr. 241). Sergi testified that when she asked Reese to leave, Reese responded with "There is nothing you can do, bitch. I'm staying right here. There's nothing you can do about it." (Tr. 144-145).
 {¶ 13} Sergi then left to call security and Reese followed her. (Tr. 145, 247). In the dean's office, Reese "cussed Sergi out." (Tr. 242). Sergi explained that Reese was in her face, cussing at her, threatening her and was trying to swing at her. (Tr. 147).
 {¶ 14} "Q. Why did you step back?
 {¶ 15} "A. She [Reese] swung at me. She took a swing at me.
 {¶ 16} "Q. Please describe.
 {¶ 17} "A. She reached for me to grab me. I backed away. Steve [Katros] got up, stepped in between us. I said to him: `Is there anybody else in this room or in the two offices?' where I was going to retreat into one of those rooms, looking for additional help.
 {¶ 18} "She continued to call me names, to threaten me. She said that there was no place I could go on campus where I would be safe; I hadn't seen the worst side of her.
 {¶ 19} "Ms. Hodge [another student with Reese] was pulling her out the door, telling her: `It's time to go,' that the police were coming and the two young ladies went down the stairway.
 {¶ 20} "* * *
 {¶ 21} "Q. Now you indicated she made some threats. Do you recall specifically what Ms. Reese was saying to you?
 {¶ 22} "A. On that day she said: There isn't anyplace you can go on campus. I'll find you. I'll beat the crap out of you. I'll get you. This isn't over.' She was calling me all kinds of expletives, names, loudly. * * *" (Tr. 147-149).
 {¶ 23} Sergi then testified that Reese's statements terrified her and she was afraid that Reese would follow through with the threats. (Tr. 149). *Page 5 
 {¶ 24} Katros testified at trial as to what he witnessed between Sergi and Reese. He indicated that Reese came into the dean's office after Sergi. He observed Reese screaming and yelling in Sergi's face and that she was waving her hands, threatening to slap Sergi. (Tr. 183). He also testified that Sergi appeared "a little bit" frightened. (Tr. 199).
 {¶ 25} The above evidence satisfies all of the essential elements of menacing. Clearly attempting to slap or hit a person is knowingly causing that person to believe that physical harm will be caused. Furthermore, the verbal threats, such as that there was no place on campus Sergi would be safe and that Reese would get her, also could knowingly cause Sergi to believe physical harm would result. Admittedly the threats made were future threats of physical harm; however, future threats can constitute a violation of the menacing laws. State v.Klickner, 4th Dist. No. 07CA855, 2008-Ohio-4085, ¶ 15. InKlickner, the Fourth District was faced with the threat "I'm gonna get you, bitch" and had to determine whether it constituted a threat of serious physical harm. Based on its prior holdings it found that it did. Id. ¶ 16. Here, we have a similar threat; there was name calling and the statement that Reese was going to get Sergi. We agree with theKlickner holding and adopt it as our own and accordingly find that the threats made in the factual scenario of the case at hand were sufficient to show menacing.[1] Therefore, this assignment of error lacks merit.
 SECOND ASSIGNMENT OF ERROR {¶ 26} "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 27} Under a manifest weight standard, the appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, 78 Ohio St.3d at 387, 1997-Ohio-52, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Our *Page 6 
discretionary power to grant a new trial is exercised only in the exceptional case where the evidence weighs heavily against conviction.Thompkins, 78 Ohio St.3d at 387.
 {¶ 28} Reese contends that the jury lost its way in determining credibility and that "it is not reasonable to conclude that calling one names rises to the level of knowingly causing one to believe that physical harm will be caused."
 {¶ 29} As the evidence discussed in the above assignment of error shows, Sergi testified that Reese did not just call her names, but rather Reese made threats and was threatening to slap her. Threats and attempting to hit or slap a person would be proof of menacing, if believed. Klickner, 4th Dist. No. 07CA855, 2008-Ohio-4085, ¶ 15. That said, Reese testified that she was not attempting to slap Sergi and that she did not threaten her; she did not try to scare her, rather she tried to hurt Sergi's feelings. (Tr. 243-244, 248). Thus, the evidence at trial establishes that there were two versions of whether there was an attempt to slap or hit Sergi and whether threats were made to Sergi, Sergi's version on what occurred on October 15, 2007.
 {¶ 30} As there were two versions, it was up to the trier of fact to determine which was more believable. As we have previously explained, we give great deference to the fact finder's determination of credibility.State v. Rodriguez-Baron, 7th Dist. No. 07MA86, 2008-Ohio-4816, ¶ 34, citing State v. Wright, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing credibility. Rodriguez-Baron, 7th Dist. No. 07MA86,2008-Ohio-4816, ¶ 34, citing Wright, 10th Dist. No. 03AP-470,2004-Ohio-677, at ¶ 11.
 {¶ 31} Given the great deference we give to the jury and considering all of the testimony in this case, we cannot find that the jury lost its way in determining credibility. Sergi's version of what occurred on October 15, 2007 was corroborated by Katros (as is discussed in the first assignment of error) and accordingly rendered her testimony more credible than Reese's. That said, in the statement of facts, Reese insinuates that Katros' testimony was not credible because his statement concerning the October 22, 2007 incident was different from his testimony. We do not find her argument persuasive. While in that statement concerning the October 22, 2007 *Page 7 
incident, Katros indicated that Reese called Sergi a "cunt," at trial he stated that he was not sure Reese called Sergi a "cunt," but he heard her say something. (Tr. 209). However, he went on to explain that in his statement he wrote down what he thought she said. (Tr. 209). Given his explanation, his testimony and earlier statement are not clearly contradictory to each other. Regardless, without passing judgment on whether the testimony and the statement are at odds, it is important to remember that this testimony concerned the October 22, 2007 incident, which Reese was not found guilty. Since the testimony about the October 15, 2007 incident did conform to his prior statement and Sergi's testimony, the trier of fact could easily have believed it and found her guilty of menacing.
 {¶ 32} Furthermore, testimony from David Truman, a Youngstown State University police officer, about the October 22, 2007 incident corroborated Sergi's testimony regarding that incident, and thus lent her greater overall credibility. While Truman's testimony concerned only the incidents that he observed during Reese's arrest on October 22, 2007, for the aggravated menacing charge of which Reese was found not guilty, his testimony sheds light on Reese and Sergi's credibility. He testified that Reese resisted arrest and that when she saw Sergi, she started calling her filthy names and made threats toward Sergi and her family. (Tr. 217-219). He described Reese as being "nuts" during the arrest. (Tr. 220).
 {¶ 33} That testimony conformed to Sergi's testimony of what happened at the time of arrest and disputed Reese's testimony concerning what happened during the arrest. Sergi testified that when Reese was arrested and saw Sergi, Reese threatened Sergi and her child. (Tr. 154). Reese disputed that she resisted arrest, that she threatened Sergi and that she was "nuts". (Tr. 275-276).
 {¶ 34} In all, considering that Sergi and Katros' testimony about the October 15, 2007 incident was comparable, that Sergi and Truman's testimony about the October 22, 2007 incident was also comparable, and that Reese's testimony differed from the above witnesses, we cannot conclude that the jury lost its way in determining credibility. The jury was not unreasonable in believing Sergi's verision of what occurred on October 15, 2007 considering that Katros and Truman showed that Sergi was believable. As such, for all the above reasons, there was competent credible *Page 8 
evidence to support the conviction for menacing and thus it was not against the manifest weight of the evidence. This assignment of error is meritless.
 THIRD ASSIGNMENT OF ERROR {¶ 35} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."
 {¶ 36} Reese contends that statements made by the prosecutor during closing arguments constituted misconduct. She specifically contends that the prosecutor's reference to "an irate student and Virginia Tech" were improper.
 {¶ 37} In reviewing a prosecutor's alleged misconduct in closing arguments, the court looks at whether the prosecutor's remarks were improper and whether those remarks affected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14-15. Reversal is not warranted unless, based upon the entire record, the conduct complained of deprived the defendant of a fair trial. State v.Fears (1999), 86 Ohio St.3d 329, 332.
 {¶ 38} Two comments were made by the prosecutor concerning the Virginia Tech shooting. The first comment was:
 {¶ 39} "You heard Ms. Sergi testify that that behavior, this outburst, caused her to think of Virginia Tech. It wasn't too far in the past that that unfortunate incident had happened because of an irate student." (Tr. 281).
 {¶ 40} The second comment was:
 {¶ 41} "`I'll kill you. I'll kidnap your kids. I've done this before. That's why V-Tech happened.' Those are statements that you heard from both Officer Truman and Ms. Sergi. If Ms. Reese was as upset as she was to go in and do [sic] bitches and whores to Ms. Sergi because of this, think about October 22nd when she got arrested." (Tr. 282).
 {¶ 42} Reese did not object to these comments, thus she waives all but plain error. State v. Hanna, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 84.
 {¶ 43} A prosecutor is entitled to considerable latitude in opening statement and closing argument, and may comment freely on what the evidence has shown and what reasonable inferences may be drawn from it.State v. Smith (1997), 80 Ohio St.3d 89, *Page 9 
111. As is discussed below, neither of the above two comments constitute prosecutorial misconduct because they both are accurate comments on the evidence.
 {¶ 44} Regarding the first comment, during Sergi's testimony about what occurred on October 15, 2007, she was asked how Reese's statements that no place on campus would be safe for Sergi and that Reese would find her made her feel. Sergi responded she was afraid. The prosecutor then asked, "Afraid of what?" She answered:
 {¶ 45} "Afraid that she [Reese] would follow through on her threats, afraid of situations like Virginia Tech, afraid of a violent student on campus who is not about to back down." (Tr. 149).
 {¶ 46} The prosecutor's first comment, that Reese's behavior made Sergi think about Virginia Tech, is clearly referencing Sergi's testimony and is an accurate comment on that testimony.
 {¶ 47} Likewise, the prosecutor's second comment about threatening Sergi and her family, is also an accurate comment on the testimony. Truman, the YSU officer, testified that when Reese was arrested she was calling Sergi names and making comments:
 {¶ 48} "A. Ms. Reese saw Ms. Sergi out in the hallway, and she started calling her all kind of filthy names, telling what she was going to do.
 {¶ 49} "Q. What names?
 {¶ 50} "A. There were so many. She said: `I'm going to kidnap your kids. I'm going to kill you.' She called her a bitch. She said she was going to sue this F-ing university, and she said: This is why Virginia Tech happened.'" (Tr. 219).
 {¶ 51} Thus, the prosecutor was merely commenting on what Truman alleged Reese said while she was being arrested. That testimony and alleged statement of Reese go to show whether an actual threat was made. It could also be used to show that Reese would follow through in the same manner as happened in Virginia Tech.
 {¶ 52} The prosecutor was using both of those statements about Virginia Tech to explain what the evidence showed. Thus, there is no prosecutorial misconduct and even if this court could find it was, it does not rise to the level of plain error because when viewing the entire record, there was other evidence, as discussed in the first and *Page 10 
second assignments of error, as to a threat of future physical harm and a threat of immediate harm by means of attempting to slap or hit Sergi. As such, any error did not affect the outcome of the trial. This assignment of error lacks merit.
 FOURTH ASSIGNMENT OF ERROR {¶ 53} "THE TRIAL COURT ERRED IN NOT GIVING
DEFENDANT/APPELLANT CREDIT FOR FORTY-FIVE (45) DAYS SERVED TOWARD THE MAXIMUM SENTENCE OF THIRTY (30) DAYS."
 {¶ 54} Following sentencing, Reese requested to be given credit for the time she served in jail awaiting trial. The prosecutor, at that time, argued that Reese could not be given credit for any of the time served because a felony charge against Reese was still pending. (Tr. 321). Reese disagreed. (Tr. 321). The trial court denied the request for credit for time served.
 {¶ 55} On appeal, Reese argues that the trial court's decision was incorrect. She contends that R.C. 2967.191 mandates that a convicted defendant be given credit for the number of days he/she was confined for any reason arising out of the offense for which he/she was convicted and sentenced. She contends that the felony with the same arrest date arose from the same incident that this case arose from and thus, she asserts she was entitled to credit for the time she served. In response to this argument, the state confesses error.
 {¶ 56} Reese's recitation of the law is correct. Our sister districts have explained:
 {¶ 57} "R.C. 2967.191 requires that jail credit be given only for the time the prisoner was confined for any reason arising out of the offense for which he was convicted and sentenced. It does not entitle a defendant to jail-time credit for any period of incarceration which arose from facts which are separate and apart from those on which his current sentence is based. State v. Dawn (1975), 45 Ohio App.2d 43."State v. Goehring, 6th Dist. No. OT-03-035, 2004-Ohio-5240, ¶ 9, quotingState v. Smith (1992), 71 Ohio App.3d 302. See, also, State v.Zuder (Feb. 7, 1997), 2d Dist. No. 96-CA-11.
 {¶ 58} Furthermore, we have stated: *Page 11 
 {¶ 59} "It has been long recognized that, `a defendant is not entitled to jail time credit for any period of incarceration which arose from facts separate and apart from those on which his current sentence is based.' State v. Smith (1992), 71 Ohio App.3d 302, 304; and see accord,State v. Marcum, 5th Dist. No. 01-COA-01411, 2002-Ohio-101 (no credit for confinement on unrelated charges)." State v. Stafford, 7th Dist. No. 265, 2002-Ohio-5243, ¶ 38.
 {¶ 60} Given the above law and the fact that both parties (the state confesses error) admit that the time Reese was held in jail awaiting trial arose out of facts relating to the instant offense, she is entitled to credit for time served. Or in other words, she is entitled to credit for time served because the record shows that the period of incarceration did not arise from facts separate and apart from those on which the menacing sentence was based. Therefore, this assignment of error has merit.
 CONCLUSION {¶ 61} The first three assignments of error lack merit, but the fourth assignment of error has merit. Thus, the conviction is hereby affirmed and the trial court's denial of credit for time served is reversed. However, instead of remanding the case to the trial court to correct the credit for time served error, acting within our appellate authority under App. R. 12(A)(1)(a) we hereby modify the judgment of sentence to give Reese credit for the time she served, 45 days. Stafford, 7th Dist. No. 265, 2002-Ohio-5243, ¶ 86. Judgment entered accordingly.
Donofrio, J., concurs.
DeGenaro, J., concurs.
[1] There was testimony that on October 22, 2007, the date of the arrest, Reese also threatened Sergi's family and made additional threats to Sergi. However, as stated above, the charge that resulted from the October 22, 2007 conduct was aggravated menacing, which she was found not guilty. Thus, conduct on that day is not considered in determining whether there was sufficient evidence for the menacing charge which was alleged to have occurred on October 15, 2007. *Page 1