[Cite as *State v. Antill*, 2013-Ohio-2265.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                           )
                                         )
    PLAINTIFF-APPELLEE,                   )
                                         )     CASE NO. 12 BE 3
V.                                       )
                                         )     OPINION
JOSEPH M. ANTILL,                        )
                                         )
    DEFENDANT-APPELLANT.                  )

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Court of Common
                             Pleas of Belmont County, Ohio
                             Case No. 09CR221

JUDGMENT:                    Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellee       Christopher Berhalter
                             Prosecutor
                             Scott A. Lloyd
                             Assistant Prosecuting Attorney
                             147-A West Main Street
                             St. Clairsville, Ohio 43950

For Defendant-Appellant      E. Kelly Mihocik
                             Assistant State Public Defender
                             250 East Broad Street – Suite 1400
                             Columbus, Ohio 43215

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: May 30, 2013

DONOFRIO, J.

{¶1} Defendant-appellant, Joseph Antill, appeals from a Belmont County Common Pleas Court judgment convicting him of assault of a peace officer and aggravated robbery following a jury trial.

{¶2} On October 15, 2009, appellant went to a bar located in the Riverside Restaurant where Phyllis Holt was bartending. According to Holt, she was tending bar that evening when appellant began yelling at another patron in the bar. When appellant did not listen to her instruction to lower his voice, Holt asked him to leave, which he did. However, appellant was in and out of the bar after that. Holt called 911 but was told there was no officer on duty at the time.

{¶3} Eventually Powhatan Police Officer Keven Yates arrived at Riverside. He found appellant outside and spoke with him. Officer Yates also spoke with those inside the bar. Office Yates suggested to appellant that he go home and "sleep it off." Appellant, who lived nearby, went home.

{¶4} A few hours later, appellant called Riverside. According to Patricia Geilinger, the employee who answered the phone, appellant stated it was not right that he was barred from the bar and stated "You tell them in the back I'll get them." Geilinger interpreted appellant's statement as a threat. She hung up and called the Powhatan Police Department to report the threatening call.

{¶5} Sometime after midnight, Officer Yates, who was now accompanied by Shadyside Police Officer Joshua Haught, responded to the call by going to appellant's house. Appellant's father answered the door and let the officers inside. According to the officers, Officer Yates told appellant to stop calling Riverside and threatening them. Appellant became upset and began cursing at the officers. Twice more Officer Yates asked appellant to stop calling Riverside and appellant, who appeared to be intoxicated, continued to yell at the officers. According to the officers, appellant then got off of the couch he had been sitting on and went toward Officer Yates aggressively and enraged. Appellant shouted at Officer Yates and pushed him. Officer Haught then stepped in to help Officer Yates.

{¶6} The two officers struggled back and forth with appellant trying to

handcuff him. Apparently, appellant is a much larger man than the officers. When they were not able to gain control of appellant, Officer Yates used his Taser to try to subdue appellant. Officer Yates stated that he "tased" appellant twice but this only further enraged appellant.

{¶7} According to the officers, they managed to get appellant on his knees with his upper body on the couch. But the lower half of Officer Haught's body was under appellant's chest and Officer Yates was on top of appellant's back. While they were in this position, Officer Yates saw appellant grab for Officer Haught's loaded gun. Officer Yates yelled to Officer Haught, "He's got your gun. He's going for your gun." The officers then managed to subdue appellant and place him in handcuffs.

{¶8} A Belmont County Grand Jury indicted appellant on one count of assault on a peace officer, a fourth-degree felony in violation of R.C. 2903.13(A)(C)(3). Several months later it also indicted him on one count of aggravated robbery, a first-degree felony in violation of R.C. 2911.01(B), for trying to take Officer's Haught's gun.

{¶9} The matter proceeded to a jury trial where the jury found appellant guilty of both charges. The trial court subsequently sentenced appellant to one year in prison on the assault count and three years in prison on the aggravated robbery count, to be served consecutively for a total of four years.

{¶10} On appellant's motion, this court granted him leave to file a delayed appeal. He filed his notice of appeal on January 17, 2012.

{¶11} Appellant raises six assignments of error, the first of which states:

MR. ANTILL'S CONVICTION FOR AGGRAVATED ROBBERY
IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} Appellant argues that his aggravated robbery conviction was against the manifest weight of the evidence. In support, appellant points to Officer Haught's testimony that he never felt or thought appellant was pulling on his gun and to his own testimony that he never reached for Officer Haught's gun.

**{¶13}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 668 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶14}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

**{¶15}** Appellant only takes issue with his aggravated robbery conviction here. He does not assert that his assault conviction was against the weight of the evidence.

**{¶16}** The jury convicted appellant of aggravated robbery in violation of R.C. 2911.01(B), which provides:

(B) No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law

enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:

(1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;

(2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.

{¶17} We must examine the evidence offered at trial in order to determine if it supports the jury's verdict. The testimony as to the aggravated robbery count was as follows.

{¶18} Officer Yates testified that at appellant's house after he told appellant to stop calling and threatening Riverside, appellant became enraged, came toward him, and shoved him. (Tr. 207-210). Because of the shove, Officer Yates attempted to place appellant under arrest for assaulting a police officer. (Tr. 211). Appellant resisted and pushed the officers away. (Tr. 212). After a struggle that involved tasing appellant to no avail, the officers managed to get appellant into a position where his knees were on the floor and his upper body was on the couch. (Tr. 220). In this position, the lower half of Officer Haught's body was under appellant's chest. (Tr. 220). Officer Yates was on top of appellant's back. (Tr. 221). As Officer Yates was directing appellant's father to get back, he saw appellant grab for Officer Haught's gun. (Tr. 222). Officer Yates testified that appellant's left hand was on Officer Haught's loaded gun and appellant was "yanking" on the butt of the gun. (Tr. 223). Officer Yates yelled to Officer Haught, "He's got your gun. He's going for your gun." (Tr. 223). Officer Yates put appellant in a choke hold. (Tr. 224). The officers were then able to subdue appellant. (Tr. 224-225). Officer Yates also testified that he and Officer Haught were both dressed in uniform and acting as police officers during this encounter. (Tr. 317).

{¶19} Officer Haught testified that after struggling with appellant, appellant

threw him off balance and he landed on the couch. (Tr. 342). Appellant ended up on Officer Haught's midsection and Officer Yates was on top of appellant. (Tr. 342). Officer Haught stated that his loaded service weapon was on the right side of his belt. (Tr. 342-343). Officer Haught stated that he grabbed appellant's right arm "at which point there was a slight tugging" and he heard Officer Yates yell that appellant was going for his gun. (Tr. 343). Officer Haught testified that until Officer Yates yelled out to him, he did not know there was a problem with his gun. (Tr. 343-344). Officer Haught let go of appellant's right arm, re-secured his gun in his holster, and re-secured the thumb brake. (Tr. 344). On cross-examination, Officer Haught stated that he did not know appellant's hand was on his gun at the time. (Tr. 378).

{¶20} Lawrence Antill, appellant's father who was at home during appellant's encounter with the police, testified that he did not see appellant grab Officer Haught's gun. (Tr. 431).

{¶21} Appellant testified that after struggling with the officers, the three ended up in a position where he was on top of Officer Haught. (Tr. 482). Appellant testified that he did not attempt to grab Officer Haught's gun. (Tr. 482-483, 494). Instead, appellant stated that he was trying to push himself off of Officer Haught. (Tr. 484).

{¶22} An appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence. *State v. Wright*, 10th Dist. No. 03AP-470, 2004-Ohio-677, ¶11. But we must give great deference to the fact finder's determination of witnesses' credibility. *Id.* The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.*

{¶23} In this case the jury heard conflicting testimony. Officer Yates stated that he saw appellant grab for Officer Haught's gun. Appellant stated that he did not grab for the gun. The jury was faced with a credibility determination as to which testimony to believe. Apparently, they found Officer Yates's testimony to be more

convincing. Because the jury was in the best position to judge the witnesses' credibility, we will not second-guess their determination.

**{¶24}** Because the jury did not lose its way in reaching a verdict, the verdict is not against the manifest weight of the evidence. Accordingly, appellant's first assignment of error is without merit.

**{¶25}** Appellant's second assignment of error states:

> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE A CRIM.R. 29 MOTION ASKING FOR MR. ANTILL'S ACQUITTAL OF THE AGGRAVATED ROBBERY CHARGE WHEN THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH THAT CRIME.

**{¶26}** Here appellant contends that his counsel was ineffective because she failed to request an acquittal based on Crim.R. 29 due to insufficient evidence to support the aggravated robbery charge. He points out that he was not charged with aggravated robbery until five months after the incident and Officer Haught testified that he never thought appellant was trying to take his gun. Under these circumstances, appellant argues, a reasonably competent attorney would have moved for acquittal on the aggravated robbery charge and the motion would have likely been granted.

**{¶27}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶28}** Appellant bears the burden of proof on the issue of counsel's

effectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶29}** Appellant contends that his counsel was ineffective for failing to make a Crim.R. 29 motion for acquittal based on insufficient evidence to convict him of aggravated robbery. Thus, his claim here is one of sufficiency of the evidence.

**{¶30}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *Thompkins*, 78 Ohio St.3d at 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶31}** There was sufficient evidence to convict appellant of aggravated robbery. The state presented evidence going to each of the aggravated robbery elements.

**{¶32}** Officer Yates testified that he saw appellant attempt to remove Officer Haught's service weapon from its holster. (Tr. 222-223). At the time, Officer Haught was attempting to help Officer Yates arrest appellant for assaulting a police officer. (Tr. 211). Therefore, there was evidence that Officer Haught was within the course and scope of his duties. R.C. 2911.01(B)(1). And Officer Haught was wearing his police uniform at the time. (Tr. 317). Hence, appellant had reasonable cause to know that Officer Haught was a law enforcement officer. R.C. 2911.01(B)(2).

**{¶33}** This evidence is sufficient to support the aggravated robbery conviction. The state presented evidence going to each of the aggravated robbery elements under R.C. 2911.01(B). Any conflicting evidence would go to the weight of the evidence, which was discussed above.

**{¶34}** Because there was sufficient evidence to support an aggravated

robbery conviction, appellant cannot demonstrate any prejudice from his counsel's failure to raise a Crim.R. 29 motion for acquittal. Thus, he cannot demonstrate ineffective assistance of counsel here.

{¶35} Accordingly, appellant's second assignment of error is without merit.

{¶36} Appellant's third assignment of error states:

WHEN THE DEFENDANT'S COMPETENCY IS BROUGHT INTO QUESTION BEFORE TRIAL, THE TRIAL COURT MUST CONDUCT A COMPETENCY HEARING.

{¶37} Prior to trial, appellant requested a psychological evaluation. The trial court granted the request and ordered a report. It appears as though the inquiry ended here.

{¶38} In this assignment of error, appellant asserts the trial court was statutorily required to hold a competency hearing in his case. He argues that the court's failure to do so is reversible error.

{¶39} R.C. 2945.37(B) provides:

In a criminal action in a court of common pleas * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

{¶40} On September 3, 2010, appellant filed "Defendant's Motion for Psychological Evaluation." The entire motion reads, "The Defendant, Joseph Mark Antill, hereby requests a psychological evaluation for reasons set forth more particularly at the hearing." A plea agreement hearing was held that same day. Counsel did not elaborate on the reason for the motion.

{¶41} In its September 8 judgment entry, the trial court sustained appellant's motion and ordered the evaluation to be completed on or before September 17, 2010.

{¶42} The court next mentions the psychological evaluation in a September 22 judgment entry where it notes that the evaluation had not been received as of that date.

{¶43} The court held another pretrial hearing on October 15. 2010. Neither the parties nor the court mention the psychological evaluation.

{¶44} The case then proceeded to trial on October 26, 2010. No other mention of the psychological evaluation was made and appellant did not request a competency hearing.

{¶45} The Ohio Supreme Court has held that a trial court must hold a competency hearing if a request is made before trial. *State v. Were*, 94 Ohio St.3d 173, 174, 2002-Ohio-481, 761 N.E.2d 591. The Court found reversible error where defense counsel continually raised the issue of appellant's competency, appellant never testified, and appellant filed many pro se motions that casted doubt on his competency. *Id.* at 176.

{¶46} The *Were* Court distinguished its facts from those in *State v. Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986), where the Court found that the failure to hold a competency hearing was harmless error. The *Bock* Court based its finding of harmless error on the facts that the defendant testified in his own defense and was subject to cross-examination, the record failed to reveal sufficient indicia of incompetency, and "[d]efense counsel, after the original motion for a hearing, failed ever again to mention the defendant's competency until the time for appeal." *Id.* at 111.

{¶47} In *State v. Hinkston*, 182 Ohio App.3d 232, 2009-Ohio-2631, 912 N.E.2d 179 (4th Dist.), the Fourth District found that the trial court committed reversible error where it failed to conduct a competency hearing when appellant made the request for a hearing on the day trial was set to begin.

{¶48} And in *State v. Wilcox*, 16 Ohio App.3d 273, 475 N.E.2d 516 (11th Dist.1984), the Eleventh District found the defendant's plea of not guilty by reason of insanity and request for a psychiatric evaluation to show he was legally insane at the time he committed the alleged acts did not constitute a request for a competency hearing. The court held that in the absence of a specific motion for a competency hearing, no hearing is mandated. *Id.* at 275.

{¶49} This case law indicates that when a defendant specifically requests a competency hearing prior to trial, the failure to hold a hearing can be reversible error. But when a defendant simply raises an issue as to his mental state, or when the defendant testifies and demonstrates no indicia of incompetence, the trial court does not commit reversible error in failing to hold a competency hearing.

{¶50} In this case, appellant never requested a competency hearing. And after filing a motion for a psychological evaluation, appellant did not raise the issue of his mental state again until this appeal. Furthermore, like the defendant in *Bock*, appellant testified in his own defense and was subject to cross-examination. His testimony did not reveal indicia of incompetency. Based on these facts and the case law discussed, the trial court did not err in failing to hold a competency hearing and even if it did err, any error was harmless.

{¶51} Accordingly, appellant's third assignment of error is without merit.

{¶52} Appellant's fourth assignment of error states:

THE STATE'S FAILURE TO TURN OVER THREE WITNESS STATEMENTS BEFORE TRIAL WAS PREJUDICIAL PROSECUTORIAL MISCONDUCT.

{¶53} Appellant argues that the prosecutor committed misconduct by failing to disclose three witness statements to him. The witness statements were taken by Officer Yates at the Riverside Restaurant from Michael Mellott, Allen Newkirk, and Ryan Whitlatch. These witnesses did not testify at trial. Appellant's counsel objected. The trial court ruled the state's actions amounted to prosecutorial

negligence and not prosecutorial misconduct because the state did not act purposely in withholding the statements from the defense. Appellant contends this was not the proper standard to apply. Instead, he contends the court should have looked at whether he suffered any prejudice as a result of the withholding. Appellant claims he was prejudiced because he was prevented from conducting a full investigation that may have lent further support to his account of the events and undermined Officer Yates's credibility.

{¶54} The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. *State v. Fears*, 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999).

{¶55} Prior to Officer Yates's testimony, it came to appellant's and the state's attention that Officer Yates had taken the statements of three witnesses and these statements were not turned over to appellant during discovery. (Tr. 187-192). The parties and the court agreed this was not an intentional withholding by the prosecutor, as the prosecutor believed everything in the officer's file was turned over to the defense. (Tr. 188-190). In fact, the prosecutor had never seen these statements before. (Tr. 188). The statements were from three men who were involved in a shouting incident at Riverside before appellant left the bar and went home. (Tr. 191). And the court noted it had already limited how much testimony could be solicited regarding the incident at the bar. (Tr. 191).

{¶56} Appellant's counsel stated that appellant was potentially prejudiced because she was not able to adequately prepare for her cross-examination of Officer Yates and she could have spoken with those witnesses. (Tr. 189). The court was able to alleviate counsel's concern. The court allowed appellant's counsel an extra day to review the statements and to cross-examine Officer Yates the following day. (Tr. 189-192, 234-235, 278-281). The next day, after counsel had reviewed the statements, she indicated to the court that she would not have any questions regarding the issues raised in the three statements. (Tr. 278).

{¶57} The court remedied the situation by allowing appellant's counsel an

extra day to review the statements before cross-examining Officer Yates. The statements did not have any value to the defense because counsel stated she had no questions of Officer Yates regarding the statements. Additionally, counsel did not see a need to ask for a mistrial or even to request a continuance so that she might interview the men who gave the statements. Because the men who gave the statements were not at appellant's house when the crimes were committed, presumably their statements were of no value to prove or disprove that appellant committed the charged offenses. Based on the above, appellant cannot demonstrate that he was deprived of a fair trial.

{¶58} Accordingly, appellant's fourth assignment of error is without merit.

{¶59} Appellant's fifth assignment of error states:

THE JURY USED PROHIBITED, PREJUDICIAL OTHER BAD ACTS EVIDENCE TO CONVICT MR. ANTILL. BECAUSE IT WAS MR. ANTILL'S ATTORNEY THAT SUBMITTED THAT EVIDENCE, HE DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶60} In this assignment of error, appellant once again alleges he received ineffective assistance of counsel. He claims his counsel was ineffective in that she submitted the Ohio Uniform Incident Report prepared by Officer Yates without redacting the "other bad acts" evidence from it. (Def. Ex. 3). The "bad acts" appellant claims should have been redacted, as taken from the police report, were under a section titled "NOTES/COMMENTS," which followed the officer's account of the incident at hand. The notes read:

JOE ANTILL HAS SEVERAL ARRESTS FOR DOMESTIC VIOLENCE AGAINST HIS PARENTS.

JOE ANTILL HAS BEEN BARRED FROM HANK'S PLACE AND THE RIVERSIDE FOR FIGHTING.

ON JULY 4TH 2009, JOE ANTILL WAS AT A FRIEND'S

PARTY. THERE HE BECAME LOUD AND ABUSIVE AND WAS ASKED TO LEAVE. AN ALTERCATION OCCURRED WHERE HE RECEIVED FACIAL INJURIES.

THE EXPERIENCES THAT OTHER POWHATAN OFFICERS AND MYSELF HAVE HAD WITH JOE ANTILL, ARE THAT WHEN HE IS SOBER HE IS A CALM, POLITE GUY. ONCE HE HAS JUST A SMALL AMOUNT OF ALCOHOL TO DRINK HE TURNS MEAN, LOUD AND VIOLENT.

**{¶61}** Appellant contends he was prejudiced by these statements because they appear in the form of uncontested facts and they set forth a bad character trait of his that was directly at issue in this case because he had been drinking and was accused of acting violently. He argues no reasonable defense attorney would have presented these statements to the jury.

**{¶62}** The state asserts there was no ineffectiveness because the trial court ruled on a motion in limine and found that other acts evidence would be permissible.

**{¶63}** The other acts evidence in the motion in limine that the state refers to is not relevant here. Appellant filed a motion in limine asking the court to prohibit the state from introducing testimony regarding certain alleged but uncharged crimes. The trial court sustained appellant's motion in part and overruled it in part. It found that the motion dealt with testimony of witnesses who may have observed appellant's behavior within approximately six hours prior to the incident between appellant and the arresting officers. The court found the state could only introduce such testimony upon a proper foundation and where the testimony played an integral part in explaining the sequence of events on the night in question. Thus, the motion in limine had no bearing on statements in the incident report as they did not concern the night in question.

**{¶64}** Appellant's counsel used the incident report during her cross-examination of Officer Yates in questioning him about why he did not include certain details in his report and eventually persuading the officer to admit that his report was

incomplete. (Tr. 262-270). However, why counsel then offered the report into evidence is unclear. Understandably, it was part of counsel's trial strategy to question Officer Yates about why he failed to include purportedly important details in his report. But it is troubling that counsel then offered the incident report into evidence, without redacting the notes/comments by Officer Yates, which undoubtedly cast appellant in a bad light. Had the prosecutor offered the incident report into evidence, appellant would likely have appealed based on inadmissible character evidence.

{¶65} Offering the entire incident report into evidence was not a prudent decision. But under the ineffective assistance of counsel standard of review, we must look at whether appellant was prejudiced by counsel's performance.

{¶66} Given that appellant testified and gave a conflicting account of the events from that account of the officers, the jury had to make a credibility determination as to whose testimony was the most believable. It is likely that appellant lost credibility in the jury's eyes based on the statements in the incident report. The report set out, as facts reported by a police officer, that appellant has been arrested several times for domestic violence against his own parents, that he fights at bars, and that he is mean, loud, and violent when he drinks. All of these statements make appellant's testimony less believable especially in light of the fact that appellant had been drinking on the night in question. Thus, we must conclude that appellant was prejudiced by the incident report.

{¶67} Accordingly, appellant's fifth assignment of error has merit.

{¶68} Appellant's sixth assignment of error states:

THE CUMULATIVE ERRORS IN THIS CASE PREVENTED MR. ANTILL FROM HAVING A FUNDAMENTALLY FAIR CRIMINAL TRIAL.

{¶69} Finally, appellant asserts that the cumulative effect of the above alleged errors denied him a fair trial.

{¶70} An appellate court may reverse a defendant's conviction based on the

doctrine of cumulative error. Cumulative error occurs when errors deemed separately harmless deny the defendant a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

{¶71} The only assignment of error that has merit is appellant's fifth assignment of error. Appellant's other alleged errors are meritless. There is no cumulative error.

{¶72} Accordingly, appellant's sixth assignment of error is without merit.

{¶73} For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded for a new trial.


Vukovich, J., concurs.

Waite, J., concurs.